```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                 CENTRAL DIVISION at FRANKFORT
```

CARRIE L. SCHMID,                )
                                 )
    Plaintiff,                   )    Civil Case No.
                                 )    3:18-cv-60-JMH
v.                               )
                                 )    **MEMORANDUM OPINION**
NANCY A. BERRYHILL., Acting      )    **& ORDER**
Commissioner of the Social       )
Security Administration,         )
                                 )
    Defendant.                   )
                                 )

***

Plaintiff Carrie L. Schmid brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision made by the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision because it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Schmid filed an application for Social Security Disability Benefits on June 25, 2014, with an alleged onset date of January 22, 2013. [DE 7 at 1 (citing TR 206)]. She claims that her post-traumatic stress disorder ("PTSD"), depression, anxiety, fibromyalgia, and other conditions have rendered her disabled under the Social Security Act. [TR 222]. Schmid is an Air Force

1

veteran who reports several experiences of sexual and physical trauma, harassment, and bullying by fellow service members. [DE 9 at 2 (citing TRs 89-90, 651-52, 662, 679, 987-90, 916-18, 1103-04)]. After she was placed on medical leave, she eventually resigned from her role in the Air Force as a civilian employee. [*Id*. at 3 (citing TR 639, 687, 750, 1100)]. She worked in information technology performing database management and data entry. [TR 52, 54].

**A. Medical record and administrative hearing**

Schmid's claim was denied initially and on reconsideration. [*Id*. at 1-2 (citing TR 156)]. She requested a hearing and one was held before ALJ Greg Holsclaw. [*Id*. at 2 (citing TR 35)]. At the time of the hearing, Schmid was forty-seven years old. [TR 49]. Schmid testified at the hearing that her PTSD and fibromyalgia are the most difficult impairments to work with. [TR 59].

In her initial questionnaire, Schmid described her pain as widespread, with symptoms similar to that of a severe flu that never goes away, but only change in severity. [TR 237]. She claims it began in her shoulder, developed into fibromyalgia, and got worse with her PTSD diagnosis. [TR 237]. In Schmid's view, the PTSD is extremely restricting. She said she has a difficult time working in a cubicle and being close to a large number of people. [TR 62]. Schmid stated that she has been treated for PTSD with

2

physical therapy, psychiatric treatment, and medication. [TR 94, 65]. She attends yoga classes to help manage the symptoms of PTSD, which usually last forty-five minutes and have six to eight people in them. [TR 69, 70]. She also described cycles of pain from the fibromyalgia that come and go, but are near debilitating when they strike. [TR 71-72]. Schmid said she used to be able to participate in a number of activities, but said her fatigue sometimes caused her to forego even basic personal needs like shaving and hair styling. [TR 239]. In sum, Schmid described being very active before the impairments began affecting activities in her everyday life. [TR 240]. She explained that a normal day at the time of the questionnaire might have included putting dishes away, feeding her dogs and letting them out, intermittent rest and sleeping, and starting laundry. [TR 243]. Her husband goes everywhere with her, Schmid stated, because she is unsure of how much energy she will have and because loud noises can "set her off." [DE 246]. She claimed she has trouble lifting, squatting, bending, standing, reaching, walking, kneeling, talking, and climbing stairs. [DE 248]. Schmid also complained of difficulty with her memory, concentration, completing tasks, understanding, following instructions, using her hands, and getting along with others. [*Id*.]. Schmid's husband echoed her concerns about handling stress and being in large crowds or lines. [TR 258].

The ALJ asked Schmid several factual questions to determine the extent of her impairments. Schmid stated that she tries to walk with her dogs off-leash twice a day for fifteen or twenty minutes at a time. [TR 49]. She told the ALJ that she is able to drive and does so every other day to go to the grocery store, church, and other places she needs to go. [TR 50]. Schmid answered in the affirmative when asked if she could lift her arms over her head and if she could pick up a stack of coins on a table. [TR 74]. She talked about doing online crafting and social networking on her computer. [TR 76-77]. Schmid testified that she can take care of her own personal hygiene, can tie her shoes, and can make meals for herself and her husband. [TR 77-78]. She testified that she still has trouble retaining information she has read and has difficulty concentrating. [TR 88]. Schmid also seemed optimistic about the idea of her conditions and their symptoms improving. [TR 90].

A vocational expert, Martha Goss, testified as to Schmid's occupational background, jobs available in the national economy, and the exertional level of those positions. [*See* TR 93, 94]. Goss testified that, based on the Dictionary of Occupational Titles,[1]

---

[1] The Dictionary of Occupational Titles was developed by the United States Department of Labor and is used by the Social Security Administration to determine if a claimant can perform work previously done or if there are any jobs she could perform in the national economy.

Schmid's former job would be considered a sedentary, semi-skilled position, with some aspects that would require medium exertion. [TR 95]. The ALJ then asked if a person with Schmid's impairments due to her limitations would be able to perform the same job. [TR 96]. Goss answered in the negative. [*Id*.]. The ALJ then asked if a person with those limitations could perform some work in the national economy at the "light exertional level." [*Id*.]. Goss replied that there are several thousand jobs in the United States for a machine tender, for bench work, and a light sorter or packer, according to the Dictionary of Occupational Titles. [*Id*.].

The ALJ found that Schmid did have several impairments. [TR 18]. He cited to medical opinions and tests assessing her physical and psychological ailments and discussed specific limitations she faces from those conditions. [TR 19]. When discussing Schmid's PTSD, he noted that the medical evidence in the record shows that her symptoms have varied some, but they appear to have improved with treatment. [TR 19 (citing TRs 573-901; 937-1052; 1117-1190)]. In fact, in 2017 Schmid noted that she felt "OK," her mood was generally stable, and her medication was helping with her symptoms. [TR 1141]. Her mental status examination showed that she was "fully-oriented," had no apparent deficits in her attention or concentration, and her memory was intact. [TR 1142].

5

Next, the ALJ found that Schmid's impairments did not meet the severity required in the regulatory listings. [TR 20 (citing 20 C.F.R. 404.152(d), 404.1525 and 404.1526)]. However, the ALJ found that Schmid did have the residual functional capacity[2] to perform less than the full range of light work. [TR 21]. She does have the residual functional capacity, the ALJ found, to perform simple, routine work. [*Id*.]. He also did not find Schmid persuasive in her assertion that she could not perform any work because it contradicted significant medical evidence in the record. [TR 22-23]. He also indicated that older reports with conclusory allegations of disability made seven or more years before the determination were not indicative of work Schmid would be able to perform now. [TR 23].

Finally, the ALJ found that while Schmid could not perform any past relevant work, he found her residual functional capacity allowed for her to work in a significant number of jobs in the national economy. [TR 24]. The ALJ relied on Goss's testimony at the hearing regarding the Dictionary of Occupational Titles. [TR 24, 25]. Thus, the ALJ found that Schmid was not entitled to Social Security Disability Benefits under § 216 of the Social Security

---

[2] Residual functional capacity, as it is used by the Social Security Administration, aims to determine the limitations the claimant's impairments impose on her ability to perform gainful work activity. Essentially, the residual functional capacity simply outlines what activities the claimant can or cannot do.

Act. [*Id*. (citing TR 7)]. The Appeals Council denied Schmid's request for review. [*Id*. (citing TRs 201, 1)]. Schmid in this action asks the Court to set aside the Commissioner's decision and grant her claim for benefits, or, in the alternative, remand the case to the Commissioner for further proceedings. [*Id*.].

**B. Factual background of Schmid's challenge to ALJ's finding**

Schmid challenges the ALJ's decision on two grounds. First, she argues that the ALJ impermissibly discounted three opinions provided by physicians who treated Schmid in his assessment of her specific functional abilities. [DE 8]. Second, Schmid challenges the ALJ's residual functional capacity findings regarding her psychological impairments. [*Id*.].

The ALJ considered several medical opinions in making his determination, including five from practitioners Schmid discusses in her motion for summary judgment. Kaushik Raval, M.D. [TR 897-901], Elaine M. Tripi, Ph.D. CFC [TR 915-925], and Kenny Bertram, Ph.D. [TR 1100-1112] all examined Schmid. Larry Fruedenberger, Psy.D. and Laura Cutler, Ph.D. provided opinions based on a review of the documents in the record.

Raval performed a psychiatric evaluation of Schmid on June 12, 2014. [TR 902]. Schmid "definitely" met the criteria for a diagnosis of chronic PTSD starting with her time in the Air Force.

7

[TR 905]. Raval found that she was unemployable because of her PTSD. [*Id*.]. Tripi, a licensed psychologist, evaluated Schmid on June 22, 2014. [TR 916]. She found that Schmid's symptoms of PTSD were "active and florid," stating that Schmid cried openly and uncontrollably during the session. [TR 923]. Tripi found that Schmid is not a viable rehabilitation candidate and is not capable of sustaining substantial gainful work activity. [*Id*.]. Bertram performed an initial PTSD disability benefits questionnaire on Schmid. [TR 1100]. He indicated that Schmid had PTSD of clinical relevance—due in large part from the sexual abuse and harassment she encountered in the Air Force—that was "chronic and severe in degree." [TR 1114].

Freudenberger, a psychologist, evaluated Schmid's records in October of 2014 and found that while she did have affective and anxiety-related disorders that moderately impacted her ability to function in certain situations, her impairments were not "serious and persistent" as required by the listing for anxiety and depressive disorders. [TR 111-12]. Freudenberger summarily concluded that Schmid did not present evidence of both medical treatment and the capacity to adapt to changes in her environment, or to demands that are not already a part of her daily life. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Cutler came to the same conclusion. [TR 130-131].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial-evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978)). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Sec'y of Health & Human Serv.*, 658 F.2d 437, 439 (6th Cir. 1981).

### III. ANALYSIS

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary, the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1–3.

*Williamson v. Sec'y of Health and Human Serv.,* 796 F.2d 146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that

he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the parties' cross motions for summary judgment concern the same facts, the Court will consider their motions [DE 7; DE 9] together. Additionally, although Schmid appears to make two separate arguments, both come down to the proposition that the ALJ's determination regarding her residual functioning capacity is not supported by substantial evidence.

Schmid claims that the ALJ failed to follow 20 C.F.R. § 404.1527(c) when he relied on the opinions of the two physicians who did not examine her. [DE 7 at 4]. She correctly notes that her claim was filed in January of 2014, before the requirements in 20 C.F.R. § 404.1527(c) were suspended. [*Id.*]. That section directs an ALJ to evaluate "every medical opinion" he receives and give more weight to the opinion of someone who has examined the claimant than to the medical opinion of someone who did not examine her. 20 C.F.R. § 404.1527(c)(1). Schmid argues that the doctors who examined the record failed to take into consideration Bertram's

12

report, which is consistent with the reports of doctors Tripi and Ravel, because it was submitted into the record after their review of the record. [*Id.* at 6]. Further, Schmid argues, while the ALJ does not have to give any weight or special significance to opinions regarding the ultimate issue of disability, Schmid argues that the other information contained in those reports was relevant to the decision. [*Id.* at 7]. Schmid cites to a broad proposition that when an ALJ fails to follow applicable procedural requirements, meaningful review is precluded. [*Id.* at 7-8 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)].

The Commissioner counters that none of the three opinions from Schmid's examiners "identified any more specific, concrete work restrictions that might have been helpful to the ALJ" when assessing Schmid's residual functional capacity. [DE 9 at 9]. The Commissioner further notes that the definition of medical opinions in cases filed before March 2017 allowed for statements from medical sources reflecting judgments about the nature and severity of an impairment, including not only her symptoms and diagnosis, but what she can still do despite the impairment and her physical or mental restrictions. [*Id.* (citing 20 C.F.R. § 404.1527(a)(1))]. On the other hand, the Commissioner notes, opinions that are dispositive of the issue of disability are not entitled to any weight because that decision is reserved to the ALJ. [*Id.* at 9-

13

10]. The Administration argues that the ALJ did consider the opinions of the three examining doctors, as well as others in the record. [*Id*. at 10-11].

Federal regulations provide that the Social Security Administration makes disability determinations based on "all the evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3). Furthermore, the Social Security Administration must "always consider the medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b). "In evaluating the intensity and persistence of [a claimant's] symptoms, [the Administration] consider[s] all of the available evidence from [a claimant's] medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

The Court agrees that the examiner opinions do not clearly qualify as medical opinions under the pertinent regulations. The reports from the three examining physicians do not include specific information about her restrictions or what she could still do despite her impairment. Instead, they jump to a conclusion that she is too impaired to work in any capacity. Also, it is clear that the ALJ did, in fact, consider these reports, as did the two doctors who only examined the record, in finding that Schmid has a severe impairment and could not work in her former job. Because

14

the opinions of the three examining physicians do not provide medical evidence on Schmid's ability to adapt to changes in her environment, and because the opinions summarily decide she cannot work in any capacity, the ALJ was not required to give their opinions any additional weight. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Health & Human Serv.,* 964 F.2d 524, 528 (6th Cir. 1992) ("the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'").

Additionally, the ALJ examined several medical sources not mentioned by Schmid indicating that her impairment had not only improved with the help of therapy and medication, but that she was coherent, focused, and cooperative. [TR 23 (citing TR 1031-33; 1085-86; 1178-79; 1218; 1235)]. All of these medical sources were more current than the reports Schmid hoped the ALJ would use. Finally, Schmid's argument that the doctors who examined the record did not have Bertram's report is irrelevant. First, it is unlikely

15

that an opinion in line with Tripi's and Raval's would have changed those reviewing physicians' minds. Second, the decisionmaker himself did consider and referenced Bertram's report in his opinion. [TR 22-23]. The ALJ was not required to give any weight to the conclusions of physicians on the dispositive issue of Schmid's disability, although—and contrary to Schmid's assertions—he did consider the actual medical diagnoses and information from those physicians in the record. Schmid's argument that the information was completely and inappropriately ignored is without merit.

This finding also debunks Schmid's argument that the ALJ's residual functional capacity determination was not supported by substantial evidence. [DE 7 at 8]. She argues that the activities she engages in, while they may be performed at some point in time, do not indicate an ability to have a regular work schedule eight hours a day, five days a week. [*Id*. at 10]. Thus, she argues, the ALJ's reliance on those activities was not only inappropriate, but outside the scope of evidence the ALJ is required to consider.

The Commissioner points to the record and the ALJ's findings that her PTSD, anxiety, and depression were severe and meant she could only perform simple and routine work. [DE 9 at 11-12 (citing TR 16)]. The Commissioner notes that the ALJ was not using Schmid's activities to determine her ability to work full-time, but to

consider her ability to function on that level in conjunction with sufficient medical evidence to determine her residual functional capacity. [*Id*. at 12 (citing TR 17)].

As stated above, it is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including the testimony of the claimant. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)(citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). However, an ALJ is not permitted to make those determinations based on an intangible notion regarding the claimant's credibility. *Id*. (citing Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4. Those determinations must have support in the record. *Id*.

The ALJ in Schmid's case did exactly that. He noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." [TR 22]. First, the ALJ considered Schmid's own testimony, which was contradictory to her former statements that she was completely incapacitated by PTSD and fibromyalgia. [*Id*.].

17

For example, he provided statements from the transcript of Schmid discussing her yoga sessions, her ability to drive, lift her arms over her head, pick up coins, use a computer for online crafting classes, her frequent use of social networking, and her ability to cook. [*Id.*]. Based on Schmid's own testimony, the ALJ did not find it persuasive that she was unable to perform any work at all. [*Id.*]. Because her credibility on the question was then at issue, the ALJ looked to the record's medical evidence and concluded that her condition has improved, and she is able to meet the limited residual functional capacity. [TR 22-23]. Based on the medical records discussed at length in this opinion, it is clear that the ALJ relied on substantial evidence to find that at least portions of Schmid's testimony was not credible and contradicted medical findings.

This Court finds that the ALJ's opinion as to Schmid's residual functional capacity is supported by substantial medical and testimonial evidence. Thus, the Court will affirm the ALJ's finding that Schmid is not disabled pursuant to the Social Security Act.

## IV. CONCLUSION

The Court having found no legal error on the part of the ALJ and that the decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 7] be, and the same hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment [DE 9] be and the same hereby is, **GRANTED**.

A separate judgment in conformity herewith shall this date be entered.

This the 12th day of March, 2020.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge